IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRY J. TIFFEE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-20-275-SPS |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Terry J. Tiffee requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the most recent administrative hearing (Tr. 363, 1322). She completed high school and one year of college, and has worked as a district manager (Tr. 390, 1309). The claimant alleges inability to work since September 14, 2013, through her date last insured of June 30, 2015, due to chronic lymphocytic leukemia, bladder repair, bilateral knee surgery, bilateral bunions on her feet, and hearing loss in both ears (Tr. 389).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on September 18, 2013. Her application was denied. Following an administrative hearing, ALJ John W. Belcher found that the claimant was not disabled in a written opinion dated June 21, 2016 (Tr. 143-156). The Appeals Council denied review, but on July 9, 2018, this Court reversed the ALJ's decision following an unopposed motion to remand filed by the Commissioner in Case No. CIV-17-404-RAW-SPS and remanded for further proceedings (Tr. 1413-1416). On remand, ALJ Bill Jones held a second administrative hearing and again determined the claimant was not disabled in a written opinion dated August 20, 2019 (Tr. 1298-1310). The Appeals Council again

denied review, so ALJ Jones's decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. ALJ Jones found that the claimant had the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and she could never climb ladders/ropes/scaffolds. Additionally, he found that she could perform work that is limited to simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any workplace changes, and no more than incidental contact with co-workers and supervisors, but no contact with the public. Finally, he found she could not perform work that required fine hearing capabilities (Tr. 1303). The ALJ thus found that even though the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, document preparer, printed circuit board inspector, and copy examiner (Tr. 1310).

### Review

The claimant's sole contention of error is that the ALJ failed to account for her nonsevere impairment of bilateral carpal tunnel syndrome. This contention lacks merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of morbid obesity, bilateral knee osteoarthritis, PTSD, major depressive disorder, and substance abuse, as well as the nonsevere impairments of chronic lymphoid leukemia, hypertension, hepatitis C,

-4-

bilateral carpal tunnel syndrome, obstructive sleep apnea, hearing loss, and GERD (Tr. 1300-1301). The medical evidence in the record as to the claimant's carpal tunnel syndrome is sparse, particularly from the alleged onset date of September 14, 2013 through her date last insured of June 30, 2015.

On November 19, 2013, Dr. Terry Kilgore conducted a physical examination of the claimant (Tr. 810-818). The claimant had a slightly reduced range of motion of the wrist, but could oppose the thumb to fingertips, manipulate small objects, and effectively grasp tools such as a hammer (Tr. 818). Indeed, Dr. Kilgore found that, *inter alia*, the claimant's hands, wrists, and elbows were normal, and he noted she was able to dress and undress herself (Tr. 812-813). Most of the claimant's treatment for all her impairments was through the Choctaw Nation. On January 15, 2014, the claimant reported bilateral wrist pain and requested a referral for injections (Tr. 2037). On March 14, 2014, at a pre-operative evaluation for her foot, she had no swelling in her joints and equal grips bilaterally (Tr. 884). The claimant then began receiving periodic steroid injections for pain in her wrists related to carpal tunnel syndrome through May 2015 (Tr. 1013, 1060, 1083).

By July 2015 (one month after her date last insured), however, the claimant was noted to have significant carpal tunnel issues, and was scheduled for carpal tunnel release (Tr. 988, 1055). She underwent a right carpal tunnel release on August 28, 2015, and a left carpal tunnel release on November 13, 2015 (Tr. 1003, 2039). By April 2016, follow-up treatment notes reflected that the claimant had normal movement of all extremities and no contractures (Tr. 1277).

On January 6, 2016, Dr. Frank Smith, M.D., with Choctaw National Health Care, completed a form as to his opinion of the physical work the claimant could perform (Tr. 1109-1113).  He indicated, *inter alia*, that she could lift/carry ten pounds occasionally and less than ten pounds frequently, and cited her carpal tunnel syndrome in support of her limitations (Tr. 1109-1110).  He indicated that reaching and pushing/pulling were limited by her impairments, including carpal tunnel syndrome, but that handling, fingering, and feeling were not affected (Tr. 1111).  When asked to discuss other work-related activities affected by her impairments, Dr. Smith noted the carpal tunnel syndrome again, stating it caused limited finger/hand sensation (Tr. 1112).

State reviewing physician Dr. Scott Spoor, M.D. determined that the claimant could perform the lift/carry requirements of light work, and that she could stand/walk a total of four hours in an eight-hour workday and sit for six hours in an eight-hour workday (Tr. 238).  Additionally, he found she could only occasionally climb ramps/stairs as well as climb ladders/ropes/scaffolds, kneel, crouch, and crawl, but that she could frequently balance and stoop (Tr. 238-239).  He found she did not have any manipulative limitations. (Tr. 239).  On reconsideration, Dr. Evette Burdich, M.D. came to almost identical conclusions, including finding no manipulative limitations, except she found the claimant could only stand/walk two hours in an eight-hour workday (Tr. 258-261).

In his written opinion at step two, the ALJ determined that the claimant's carpal tunnel syndrome was a nonsevere impairment (Tr. 1300).  At step four, he discussed the claimant's hearing testimony, as well as the relevant evidence in the record, even the evidence after her June 30, 2015 date last insured (Tr. 1303-1309).  As to her complaints

-6-

of numbness and tingling in her hands, the ALJ noted that she continued to seek treatment which led to carpal tunnel release surgery after her date last insured (Tr. 1305-1306). He further noted that Dr. Kilgore found her hands/wrists were normal at his 2013 consultative examination, and gave this overall opinion "some weight" (Tr. 1308). As to Dr. Smith's 2016 opinion, the ALJ noted it was completed after the claimant's date last insured and gave it "less weight," noting inconsistencies, specifically that Dr. Smith found no limitation in handling/fingering/feeling but contradictorily noted she had limited finger/hand sensation (Tr. 1308). The ALJ, after considering all the claimant's impairments, ultimately concluded that the claimant was not disabled (Tr. 1310).

     The claimant asserts that the ALJ erred in assessing her RFC because he failed to find her carpal tunnel syndrome was a severe impairment and further failed to account for it in the RFC because he did not discuss the series of injections she received. The Court finds that the ALJ did not, however, commit any error in his analysis. This Court and the Tenth Circuit have repeatedly held, "[o]nce the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008). Thus, even assuming *arguendo* that the ALJ erred by not finding the claimant's carpal tunnel syndrome was a severe impairment, such error was harmless because he found she had other severe impairments at step two. The ALJ is, however, required to consider all of a claimant's impairments—both severe and nonsevere—singly and in combination, when formulating a claimant's RFC. *See, e g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must

'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'") (*quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004) (*quoting* 20 C.F.R. § 404.1523)). *See also Hill*, 289 Fed. Appx. at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. However, the ALJ *did* address the claimant's nonsevere carpal tunnel syndrome at step four when he noted the normal exam in 2013 prior to her date last insured, that it worsened to require surgery *after* her date last insured, and when discussing inconsistencies in Dr. Smith's 2016 RFC assessment (Tr. 1305-1308). Furthermore, the claimant has not pointed to any evidence in the record showing that, prior to her date last insured, her carpal tunnel syndrome either individually or in combination with her other impairments, resulted in any *functional limitations*. *See Welch v. Colvin*, 566 Fed. Appx. 691, 695 (10th Cir. 2014) (finding harmless any error the ALJ made by not considering the combined effects of all of the claimant's impairments since there was no evidence that such impairments restricted the claimant's ability to work).

     The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the

court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). And it is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (*quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996)). But here, the ALJ's treatment of the medical evidence in this case meets this standard. The ALJ provided a narrative discussion of the evidence, including the claimant's daily living and functioning, and the medical opinions in the record, and the Court could follow the ALJ's reasoning and understood what the limitation to less than sedentary work entailed. *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) ("Ms. Hendron asserts that, in assessing her RFC without an explicit function-by-function analysis, the ALJ overlooked her problems with sitting. We disagree."). The claimant's assertion of further error, without more, is insufficient to warrant remand. The undersigned Magistrate Judge thus finds no reversible error in the ALJ's RFC assessment in this case. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

The undersigned Magistrate Judge finds that the ALJ specifically noted the various relevant findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record *and still concluded* that she could perform sedentary work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**